24-1573-cr(L)
*United States v. Ben-Jochannan, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of October, two thousand twenty-five.

PRESENT:    RICHARD C. WESLEY,
            SARAH A. L. MERRIAM,
            MARIA ARAÚJO KAHN,
                *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

    *Appellee*,

      v.                                                          24-1573-cr(L),
                                                                        24-1586-cr(Con.)

NNANDI BEN-JOCHANNAN; CARLOS LAUREANO,

    *Defendants-Appellants*.

_____

FOR APPELLEE:                     JACOB R. FIDDELMAN, Assistant United States
                                  Attorney (Rushmi Bhaskaran, Assistant United

States Attorney, *on the brief*), *for* Matthew Podolsky, Acting United States Attorney for the Southern District of New York, New York, NY.

FOR DEFENDANT-APPELLANT NNANDI BEN-JOCHANNAN:

DONALD YANNELLA, Donald Yannella, P.C., New York, NY.

FOR DEFENDANT-APPELLANT CARLOS LAUREANO:

MICHAEL K. BACHRACH, Law Office of Michael K. Bachrach, New York, NY.

Appeal from the judgments of the United States District Court for the Southern District of New York (Liman, *J.*).

**UPON DUE CONSIDERATION,** the judgments of the District Court entered on May 23, 2024, and May 29, 2024, are **AFFIRMED**.

Defendants-appellants Carlos Laureano and Nnandi Ben-Jochannan appeal from the judgments of the District Court entered on May 23, 2024, and May 29, 2024, respectively, following their guilty pleas to firearms offenses. Laureano pled guilty to a superseding information charging him with two counts: Count One, discharging a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. §924(c)(1)(A)(i), (ii), and (iii) and 18 U.S.C. §2; and Count Two, possessing a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. §924(c)(1)(A)(i) and 18 U.S.C. §2. These charges collectively carried a mandatory minimum sentence of 15 years in prison and a maximum of life in prison. Laureano was sentenced principally to 300 months of imprisonment on Count One, and 60 months of imprisonment, consecutive, on Count Two. *See* Laureano App'x at 102-03.

2

Ben-Jochannan pled guilty to a superseding information charging him with one count of aiding and abetting the brandishing of a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. §924(c)(1)(A)(i) and (ii) and 18 U.S.C. §2. This charge carried a mandatory minimum of seven years in prison and a maximum of life in prison. Ben-Jochannan was sentenced principally to 120 months of imprisonment. *See* Ben-Jochannan App'x at 126.

Each defendant-appellant challenges the substantive reasonableness of his prison sentence.[1] We assume the parties' familiarity with the remaining facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## **DISCUSSION**

Laureano's first count of conviction[2] and Ben-Jochannan's conviction arise out of the killing of Luis Perez. "In August 2014, Laureano provided [Perez and another person] with money for the purpose of acquiring heroin. . . . Laureano never received the heroin . . . nor did [Perez and the other person] return Laureano's money." Laureano Pre-Sentence Report ("PSR") ¶11; Ben-Jochannan PSR ¶9. On August 12, 2014, Ben-Jochannan drove Laureano and another man to West Harlem in search of Perez. When they found Perez, who was standing on the street with his girlfriend, Laureano got out of the car and approached him. Laureano brandished the firearm; shot Perez in the head

---

[1] Neither defendant challenges any other aspect of his sentence.

[2] Laureano's second count of conviction was not connected to Perez's murder; it related to his possession of firearms in connection with his drug trafficking activities in 2018 through 2022.

3

twice, killing him; fired at least one additional shot at the girlfriend; and then returned to the car where Ben-Jochannan was waiting. With Ben-Jochannan driving, the group fled the scene.

Laureano and Ben-Jochannan were indicted on charges including causing the death of a person through use of a firearm, which carries a maximum penalty of life in prison, and murder in furtherance of a continuing criminal enterprise, which allows imposition of the death penalty. Each entered into an agreement with the government to plead guilty to a superseding information, described above, and the indictment was dismissed.

## I.    Standard of Review

We review a sentence "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). "Thus, when conducting substantive review, we take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc) (citing *Rita v. United States*, 551 U.S. 338, 354 (2007)). An appellant challenging a sentence "bears a heavy burden because our review of a sentence for substantive reasonableness is particularly deferential." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012). "[O]nly those sentences that are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice" will be set aside as substantively unreasonable. *United States v. Muzio*, 966 F.3d 61, 64 (2d Cir. 2020) (citation modified).

4

## II. Laureano

Laureano argues that his sentence is substantively unreasonable, primarily because it is double the sentence recommended by the Guidelines. While it is uncommon for a District Court to impose a sentence so far above the Guidelines recommendation, that does not render Laureano's 360-month sentence substantively unreasonable, particularly in light of the unusual nature of the Guidelines approach to convictions under Section 924(c) and Laureano's conduct.

The District Court examined the Section 3553(a) sentencing factors and the purposes of a criminal sentence and adequately justified the sentence imposed. The District Court placed heavy weight on the gravity of the offense, emphasizing that Laureano had "brutally murdered an innocent man who was 22 years old at the time." Laureano App'x at 90. "The crime was brazen and it was premeditated," the District Court opined. *Id.* The District Court also considered the needs for "general and specific deterrence," to send the message "to people who might consider premeditated murders that if they are caught, there will be serious repercussions that will follow." *Id.* at 93-94; *see* 18 U.S.C. §3553(a)(2)(B). The Court considered mitigating factors, including Laureano's expression of "compunction and regret," his acknowledgment of the "ripple effects" of his crime, the positive letters from his friends and family, the fact that he had never served a lengthy prison sentence before, and his efforts to improve his education. Laureano App'x at 90, 93, 94-95. Finally, the District Court stated that the need for incapacitation weighed heavily, in light of Laureano's lengthy criminal history. *See id.* at 94; 18 U.S.C. §3553(a)(2)(C).

As the District Court explained, the Guidelines recommendation did not sufficiently account for Laureano's actual conduct, placing his case "outside of the heartland for cases under [Guidelines Section] 2K2.4," which applies to Section 924(c) offenses. Laureano App'x at 92; *see also* U.S.S.G. §2K2.4. The Guidelines do not provide for a base offense level for Section 924(c) offenses; rather, they simply recommend imposing the mandatory minimum term of imprisonment. There is therefore no difference between the recommended sentence for a defendant convicted of discharging a firearm by firing the weapon into the air, causing no injury, and the recommended sentence for a defendant like Laureano who discharged a firearm directly at a victim with the intent to kill him. Aggravating and mitigating factors are not considered in determining the Guidelines recommendation.

As a result, it is useful to consider what *other* Guidelines provisions might suggest as an appropriate sentence for the same conduct. Laureano pled guilty to the offense of discharging a firearm – for the purpose of murdering Perez. Indeed, as a part of his plea, he admitted that he "intentionally shot and killed Luis Perez . . . in furtherance of a narcotics conspiracy." Laureano App'x at 25 n.1. The PSR's description of the offense – to which Laureano did not object – makes clear that Laureano intentionally murdered Perez. Given that offense conduct, Laureano likely could have been convicted of First or Second Degree Murder. *See* 18 U.S.C. §1111; Laureano App'x at 90 (District Court describing the murder as "premeditated"). Had he been, Guidelines Section 2A1.1 or 2A1.2, which provide for base offense levels of 43 or 38, respectively, would apply. *See* U.S.S.G. §§2A1.1, 2A1.2. Assuming a reduction of three levels for acceptance of

6

responsibility, at an adjusted offense level of 35 for Second Degree Murder and a Criminal History Category of V, *see* Laureano PSR ¶40, Laureano's recommended sentence on Count One would have been 262 to 327 months. Count Two carries a recommended sentence of 60 months which "must run consecutively to any other sentences imposed." *United States v. Barrett*, 102 F.4th 60, 90 (2d Cir. 2024); *see also* 18 U.S.C. §924(c)(1)(A). Thus, the Guidelines would have recommended a sentence in the range of 322 to 387 months. The District Court's sentence of 360 months falls squarely within this range.

Considering the totality of the circumstances, a 360-month term of imprisonment is adequately supported by the Section 3553(a) factors and is not so "shockingly high" as to fall outside the range of permissible decisions. *Muzio*, 966 F.3d at 64 (citation modified).

### III. Ben-Jochannan

Ben-Jochannan's 120-month sentence, which was 36 months above the 84-month sentence recommended by the Guidelines, was also not substantively unreasonable. The statute of conviction provides for a mandatory minimum sentence of 84 months and a maximum of life in prison. *See* 18 U.S.C. §924(c)(1)(A)(ii). Again, because of the unusual nature of the Guidelines approach to Section 924(c) convictions, the recommended sentence does not account for the fact that the firearm brandished in this case *was used to murder someone*, supporting the District Court's conclusion that "Ben-Jochannan's conduct was more aggravated than the heartland." Ben-Jochannan App'x at 116. Even if he did not know that Laureano planned to commit murder, Ben-Jochannan

did know Laureano was armed, and Ben-Jochannan supplied the car, drove the shooter both to and away from the scene, and lied to the police when questioned.

In sentencing Ben-Jochannan, the District Court properly considered the relevant Section 3553(a) factors and the sentence recommended by the Guidelines. Specifically, the Court acknowledged the seriousness of the offense conduct and Ben-Jochannan's role in the offense, observing that Ben-Jochannan "knowingly and voluntarily aided and abetted the possession and brandishing of a firearm that was used to shoot and kill Mr. Perez in furtherance of a narcotics conspiracy." *Id.* at 115-16. The District Court considered general deterrence a significant purpose of the sentence, while incapacitation and specific deterrence were not significant needs for Ben-Jochannan. *See id.* at 118-19. The District Court addressed mitigating factors, including Ben-Jochannan's limited role in the murder, his lack of subsequent criminal history, and his demonstrated "ability to be a productive and law-abiding member of society." *Id.* at 119. While other sentences would also have been substantively reasonable based on all the circumstances, we find no abuse of discretion in the District Court's weighing of the sentencing factors in this matter.

We have considered the parties' remaining arguments and find them to be without merit. For the foregoing reasons, the judgments of the District Court are **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8